# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

ISIDRA ORTIZ-LEBRON, ET AL.,

      Plaintiffs,

         v.

UNITED STATES OF AMERICA,

      Defendant.

**Civil No. 10-1513 (SEC)**

## OPINION AND ORDER

Before the Court are the defendant's motion to dismiss (Docket # 105), the plaintiffs' opposition thereto (Docket # 112), and the defendant's reply (Docket # 118). After reviewing the filings and the applicable law, the defendant's motion is **GRANTED in part and DENIED in part**.

### Factual and Procedural Background

In this tort suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680, the plaintiffs seek damages in connection with the shooting death of Orlando González-Ortíz, an officer of the Police of Puerto Rico. The plaintiffs are the decedent's relatives: Isidra Ortiz-Lebron (mother), Angel H. Gonzalez-Gonzalez (father), and Angel Gonzalez-Ortiz (brother) (collectively, "Plaintiffs"). The facts, as alleged by Plaintiffs, follow.

The shooting occurred on the night of August 7, 2008, near a parking lot in San Juan, Puerto Rico, in the course of a law-enforcement operation launched by the Federal Bureau of Investigation ("FBI") to rescue a kidnapping victim and apprehend the perpetrators. Docket # 4, ¶¶ 10-13, 15-17, 19, 22. That night, the decedent and his partner were at the scene of the operation and, according to the complaint, were instructed to await "the money drop and attempt to apprehend the kidnappers." Id. ¶¶ 11-12. After "the operation started," FBI vehicles "began to move," "the suspects' car slammed into them," and the decedent and his partner "got out of their car" and were "around." Id. ¶¶ 16-18.

According to the complaint, FBI Special Agent Jared Hewitt then approached the decedent, "pointed his gun," and shot him twice. Id. ¶¶ 19 & 22. After the shooting, the decedent's partner could hear his "lungs rasping, gasping for air." Id. ¶ 26. An ambulance was called, "which arrived very quickly." Id. ¶ 27. But it was too late: Gonzalez-Ortiz was declared death upon arrival at the hospital Id. ¶ 31.

Shortly thereafter, the FBI described the decedent as a hero, fallen in the line of duty and honored him posthumously. Id. ¶ 41.Then, in August 2009, the Commonwealth filed criminal charges against Hewitt for "cardinally negligent homicide," but the United States removed the state charges against Hewitt to this district court, whereupon the FBI decided not to bring criminal charges against him.  Id. ¶¶ 44-46.

Plaintiffs presented their administrative claim to the FBI through a letter signed by their counsel and dated July 2, 2009. Docket # 105-1, p. 11. The letter stated in pertinent part:

> As a result of the untimely death of Agent Gonzalez Ortiz, his mother, father, and brother have suffered and continue to suffer severe mental pain and suffering, requiring continuing professional assistance. . . . The damages suffered by . . . [Plaintiffs], therefore call for compensation in an amount of not less than one million dollars each. Id., p. 12.

Thereafter, on December 7, 2009, the FBI, through counsel, wrote to Plaintiffs' counsel, requesting evidence of his "authority to present claims on behalf of each individual." Id., p. 8. The FBI also requested "evidence or information to support your claim for damages in the amount of not less than one million dollars for each claimant." Id.[1]

---

[1]Specifically, as authorized by 28 C.F.R. § 14.4(b) the FBI requested:

(1) A written report by your attending physician setting forth the nature and extent of the injury, nature and extent of the treatment, any degree of temporary or permanent disability, the prognosis, period of hospitalization, and any diminished earning capacity. (2) Itemized bills for medical, dental, and hospital expenses incurred, or itemized receipts of payment for such expenses.

(3) If the prognosis reveals the necessity for future treatment, a statement of expected

Plaintiffs' counsel wrote back to FBI's counsel on February 25, 2010, enclosing the requested written authorization of representation. Id., p. 3. He further stated that "[w]e intend to file a lawsuit if the government has no interest in pursuing an out-of-court settlement. If we do not hear back from you by March 12, 2010, we will assume that the government has no such interest." Id.

On March 4, 2010, FBI's counsel called Plaintiffs' counsel "to discuss the administrative claims . . . [and] advise[] . . . [him] that the authority of the FBI's Office of the General Counsel to settle claims is far below the amount you requested for each claimant." Id., p. 1.[2]   The affidavit submitted by Plaintiffs' counsel describes that telephone conversation as follows:

> The conversation was very cordial and she [the FBI's counsel] advised the undersigned that the kind of authority that she had to make an offer for an extrajudicial settlement of our clients' claims was way too low in reference to the amounts being claimed in our letter of July 2, 2009, and that we might as well go ahead and file the complaint in court. I thanked her for her candidness, and stated that indeed we would proceed to file the claim in court. Although the FBI's letter to us of December 7, 2009 had requested . . . [additional] information . . . , during our conversation the FBI attorney did not mention that request. If she had, I would have politely brought to her attention that because Orlando was dead, we have no reports from an attending physician, no prognosis, no nature and extent of treatment, no degree of temporary or permanent disability, no hospitalization period, no itemized bills for medical, dental and hospital expenses, no necessity for future treatment, etc. But the fact is that that portion of the FBI's letter was not discussed during our brief telephone conversation. I honestly took that portion of the letter as boilerplate paragraphs of a form letter, patently inapplicable to our case. Docket # 130, pp. 3-4.

---

expenses for such treatment.

(4) If a claim is made for loss of time from employment, a written statement from the employer showing actual time lost from employment, whether you are a full or part-time employee, and wages or salary actually lost.

Additionally, please submit any other evidence or information which may have a bearing on either the responsibility of the United States for the personal injury or the damages claimed. Id.

[2]On November 2, 2012, the parties were ordered to "file simultaneous affidavits regarding the telephone conversation that took place between the plaintiffs and the FBI's counsel. The parties complied and filed the requested affidavits. Dockets # 129 and 130.

The FBI's counsel also submitted an affidavit regarding her recollection of the aforementioned phone call: "I have neither recollection, nor record, of telling . . . [Plaintiffs' counsel] during the March 4, 2010 telephone conversation that he "'might as well file the Complaint . . . .'" Docket # 130-1, p. 5.

That same day, the FBI's counsel wrote back to Plaintiffs' counsel, acknowledging receipt of the requested documents evincing authorization of representation. She noted, however, that Plaintiffs' counsel had failed to "submit, as requested, any evidence or information to support the claims for damages in the amount of not less than one million dollars for each claimant." Id. (citation omitted).

Plaintiffs then filed the complaint on June 10, 2010. Docket # 4. Seeking damages on their own behalf, Plaintiffs sued the United States on the sole ground that Hewitt committed negligence under Puerto Rico law when he shot the decedent.[3] The decedent's parents, as putative heirs, also asserted an "inherited claim," on behalf of the decedent, for the suffering he experienced between the shooting and his death. After the United States answered the complaint (Docket # 21), the parties proceeded with discovery and settlement negotiations.

As the case proceeded, Plaintiffs filed an amended complaint on May 22, 2012, reiterating their damages claims based on the decedent's pain and suffering between the shooting and his death. Docket # 100, ¶¶ 10, 77-79.  While the amended complaint is mostly identical to the original one, there is a significant difference. For the first time, Plaintiffs allege that the United States' negligence also stems from the manner in which the FBI conducted the underlying kidnapping investigation and the related arrest-and-rescue operation during which the shooting occurred. See, e.g., id. ¶¶ 69, 72-75 (alleging "poor planning" in regard to the operation and ascribing negligence to the "federal government" based on its alleged failures to

---

[3]Plaintiffs also sued Hewitt under 42 U.S.C. § 1983, but such claims were dismissed. Ortiz-Lebron v. United States, No. 10-1513, 2011 WL 381722 (D.P.R. Feb. 7, 2011) (Pieras, J.). Judge Pieras, to whom this case was assigned to prior to his passing, also dismissed Plaintiffs' Section 1983 claims against the United States. Id. On January 12, 2012, this case was transferred to the undersigned. Docket # 63.

"assur[e] that all the officers involved in the operation knew each other," to "know[] of the involvement of the Puerto Rican officers in the rescue operation," to "disseminate that information," to "hav[e] air surveillance," and to "assur[e] a clear chain of command"). Notably, according to the amended complaint, then Special-Agent-in-Charge of the FBI's San Juan Field Office, Luis Fraticelli, attended Gonzalez's funeral, where he told the Puerto Rico Police Chief "that the federal government was going to have to pay at least two million dollars to compensate Orlando's family for their loss." Id. ¶ 60.

Advancing a myriad of arguments, the government moved to dismiss in June 2012. Docket # 105. Because Plaintiffs neither furnished the supplementary documentation requested by the FBI nor included in their administrative a "sum certain," the government posits, Plaintiffs failed to exhaust their administrative remedies with the FBI prior to filing their FTCA action against the United States in federal court. The government also alleges that Plaintiffs did not exhaust administrative remedies regarding (1) the claim seeking damages for the decedent's pre-death pain and suffering; and (2) the new negligence claims in the amended complaint challenging the manner in which the FBI undertook the underlying investigation and subsequent operation. Alternatively, the government argues that the new negligence claims "must be dismissed because they lack a 'private party analogue,' 28 U.S.C. § 1346(b)(1), in Puerto Rico law and, in any event, run head-on into the FTCA's 'discretionary function' exception, 28 U.S.C. § 2680(a)." Id., p. 6. Finally, the government contends that, inasmuch as the decedent's mother seeks recovery for her son's lost future earnings—solely in her capacity as "heir" and as part an "inherited" claim estate—such a cause of action fails as a matter of Puerto Rico law and therefore should be dismissed.

The plaintiffs opposed all of the defendant's contentions. The court addresses the parties' colliding arguments seriatim.

**Standard of Review**

Fed. R. Civ. P. 12(b)(1) is the appropriate vessel for challenging a court's subject-matter jurisdiction. Valentín v. Hospital Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001). In

reviewing a motion to dismiss under this rule, the court construes the plaintiffs' allegations liberally and "may consider whatever evidence has been submitted, such as . . . depositions and exhibits." Carroll v. United States, 661 F.3d 87, 94 (1st Cir. 2011) (internal quotation marks and citations omitted).  Accordingly, this court is empowered to "[w]eigh the evidence and make factual determinations, if necessary, to determine whether it has jurisdiction to hear the case." Massachusetts Delivery Ass'n v. Coakley, 671 F.3d 33, 40 n. 8 (1st Cir. 2012) (citing Torres-Negrón v. J & N Records, LLC, 504 F.3d 151, 163 (1st Cir. 2007)). When faced with a jurisdictional challenge, importantly, courts must credit the plaintiffs' well-pleaded factual averments and indulge every reasonable inference in the pleader's favor. Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010) (citing Valentin, 254 F.3d at 363). A plaintiff faced with subject-matter jurisdiction challenge has the burden to demonstrate its existence. Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (citations omitted).

### Applicable Law and Analysis

*Exhaustion of Administrative Remedies*

As related, the government contends that Plaintiffs failed to exhaust the administrative remedies in various ways. First, the defendant maintains that Plaintiffs did not provide the FBI with the supplementary damages information it requested in connection with the administrative claim. Second, it avers that Plaintiffs' administrative claim did not satisfy the "sum certain" requirement. After careful consideration, the Court rejects these contentions.

Sovereign immunity shields the United States from suit absent a consent to be sued that is "unequivocally expressed." U.S. v. Bormes, 133 S.Ct. 12, 16 (2012) (citations and internal quotation marks omitted). The FTCA, the avenue by which individuals may sue the United States government for the tortious conduct of its employees, provides such unequivocal consent. See generally 28 U.S.C. § 2674. It permits individuals to sue the government "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Such a waiver of sovereign immunity, however, is a "limited waiver."

Sanchez ex rel. D.R.-S. v. United States, 671 F.3d 86, 107 (1st Cir. 2012). Accordingly, the FTCA must be "construed strictly in favor of the federal government, and must not be enlarged beyond such boundaries as its language plainly requires." Carroll, 661 F.3d at 94 (internal quotation marks and citation omitted).

It is common ground that, before filing suit under the FTCA, a plaintiff must exhaust administrative remedies through the relevant government agency. 28 U.S.C. § 2675(a).[4] Exhaustion of administrative remedies is a jurisdictional, non-waivable prerequisite to the prosecution of a FTCA claim. Santiago-Ramirez v. Secretary of Dept. of Defense, 984 F.2d 16, 8 (1st Cir. 1993) (citations omitted); see also Acosta v. United States Marshals Service, 445 F.3d 509 (1st Cir. 2006). The First Circuit has held that a claimant satisfies the jurisdictional notice requirements of Section 2675 if she "provides a claim form or 'other written notification' which includes (1) sufficient information for the agency to investigate the claims, and (2) the amount of damages sought." Santiago-Ramirez, 984 F.2d at 19 (citations omitted). This exhaustion requirement, the First Circuit has said, is designed to give the government an opportunity to settle the claim prior to suit. Lopez v. United States, 758 F.2d 806, 809-10 (1st Cir. 1985) ("The claims process is meant largely to furnish notice to the government sufficient to allow it to investigate the alleged negligent episode to determine if settlement would be in the best interests of all.") (citations omitted). Failure to comply with the jurisdictional requirement results in a plaintiff's claim being "forever barred." 28 U.S.C. § 2401(b).

---

[4]28 U.S.C. § 2675(a) provides in pertinent part that

 [a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. . . .

*A. Failure to Provide Supplemental Information*

The government first contends that, by failing to respond to the FBI's request for supplementary information, Plaintiffs have failed to exhaust their administrative remedies. Specifically, the government maintains that the "damages" evidence that the FBI requested from Plaintiffs is among the categories of "evidence or information" that an FTCA claimant "may be required to submit" in "support of a claim for personal injury, including pain and suffering," Docket # 105, p. 8, as authorized by 28 C.F.R. § 14.4(b), which establishes the settlement procedures promulgated pursuant to 28 U.S.C. § 2672.[5] Because Plaintiffs did not furnish this information to the FBI prior to filing suit, the government reasons, they failed to properly exhaust administrative remedies, as required by § 2675(a), and the Court should hence dismiss their entire lawsuit under Rule 12(b)(1). Id. While this argument has considerable force, it still fails to carry the day.

In pressing this contention, the government relies heavily on Swift v. United States, 614 F.2d 812, 813 (1st Cir.1980). There, the plaintiff, who along with her husband were involved in a car accident with a United States Forest Service employee, sent a letter to that agency stating her claim. The agency provided her with a claim form and asked her to provide it with "personal injury and death" documentation. (Her husband had died of a fatal heart attack shortly after the accident.) Four months later, the claimant filed the claim form without documentation. The agency again wrote to her, detailing its need for information before it could process her claim. Id. The claimant's counsel, however, ignored the letter. The agency sent two more similar letters, warning that it could not process the claim without the necessary supporting information. Once six months had passed, counsel deemed the claim denied under § 2675(a), and filed a lawsuit. The First Circuit held that a failure to submit documentation for a tort claim after

---

[5]Pursuant to § 2672, each agency is authorized to issue its own regulations and establish procedures consistent for reviewing tort claims under the FTCA, and such "consistent" regulations govern filings with Federal agencies under the FTCA creates structure within which negotiations may occur.

repeated requests by the agency barred suit by the plaintiff.  Specifically, the court held that "the agency had clear authority under its own regulations . . . to request supporting information," and it agreed with the district court that the plaintiffs' failure "to provide the requested information . . . prevented the agency from further evaluating the claim for settlement purposes, the very reason for the stringent claim requirements set forth in 28 U.S.C. § 2675(a)." Id. at 814 (citation omitted). Accordingly, the court concluded that "the six month period in which an agency must process a claim under 28 U.S.C. § 2675(a) was not triggered and plaintiff's administrative remedies were not exhausted." Id.

　　At the outset, Swift has been extensively criticized by most circuits. Swift was first rejected by Adams v. United States, in which the Fifth Circuit held that an "agency lacks the power to require that the claimant supplement a notice of claim that contained 'enough details [about the underlying incident from which the complaint arose] to enable the agency to begin its own investigation.'" 622 F.2d 197 (5th Cir.) (en banc) (quoting 615 F.2d 284, 292 (5th Cir. 1980)) (alterations in original). Thirteen years after deciding Swift, in Santiago-Ramirez, the First Circuit shed more light on whether § 2675(a)'s so-called presentment requirement should be construed to include compliance with the regulations issued under § 2672. See 984 F.2d at 19 ("Acknowledging that the additional information is not relevant for notice purposes, this circuit has followed the general shift among all circuits toward a recognition of the distinction between presenting a claim in a section 2675 context and presenting a claim for settlement.") (citing, inter alia, Adams, 615 F.2d at 288-89). The Santiago court, then, adopted the position espoused by most circuits that a distinction can be drawn between presentment under § 2675(a) and settlement procedures under § 2672, thereby watering down Swift's holding that noncompliance with § 2672 requirements divested a court of jurisdiction under § 2675(a). See Santiago-Ramirez, 984 F.2d at 19 ("All that is needed for notice is what the statute specifies."); see also Henderson ex rel. Henderson v. Shinseki, 131 S.Ct. 1197, 1202 (2011) ("Jurisdictional rules may also result in the waste of judicial resources and may unfairly prejudice litigants. . .

. Because the consequences that attach to the jurisdictional label may be so drastic, we have tried in recent cases to bring some discipline to the use of this term."). [6]

Notwithstanding its continuing validity, <u>Swift</u> is nonetheless binding on this court, as reminded by the government. But <u>Swift</u> is distinguishable. To begin with, the parties here, contrary to <u>Swift</u>, had engaged in settlement negotiations, and only after FBI's counsel unequivocally informed Plaintiffs' counsel that the claims at issue exceeded the agency's settlement authority, did Plaintiffs file suit. Indeed, the requested documentation in no way would have changed the fact that the FBI's settlement authority "was limited by regulation to $50,000," Docket # 130-1 (citing C.F.R. § 0.89a), an amount plainly insufficient to settle claims of the magnitude involved here. The Court also agrees with Plaintiffs that almost all of the solicited information—no doubt a boilerplate request—was plainly inapplicable to a case of wrongful death. For instance, Plaintiffs neither claimed loss of time from employment nor were ever hospitalized. Neither Plaintiffs' "dental records" have any marginal relevance to this wrongful death case. In short, under these circumstances, it cannot be gainsaid that the absence of the requested documentation impaired the FBI from properly evaluating Plaintiffs' claims. <u>See</u> <u>Booten v. United States</u>, 95 F. Supp. 2d 37, 48-49 (D. Mass. 2000) ("[S]ection 2675(a) was not intended to allow an agency to insist on  proof of a claim to its satisfaction before the claimant becomes entitled to a day in court." (quoting <u>Avery</u>, 680 F.2d at 611)); <u>see also</u> <u>Tucker</u>, 676 F.2d  at 960 (arguing that "[t]he government can, once an action is filed, obtain evidentiary

---

[6]The Fifth Circuit's position been adopted by the Ninth Circuit, <u>see</u>  <u>Avery v. United States</u>, 680 F.2d 608 (9th Cir.1982), the Third Circuit, <u>see</u> <u>Tucker v. United States Postal Serv.</u>, 676 F.2d 954, 959 (3d Cir.1982), the Sixth Circuit, <u>see</u> <u>Douglas v. United States</u>, 658 F.2d 445, 447 (6th Cir.1981), the Seventh Circuit, <u>see</u> <u>Charlton v. United States</u>, 743 F.2d 557, 560 (7th Cir. 1984), the Eleventh Circuit, <u>see</u> <u>Bush v. United States</u>, 703 F.2d 491, 494 (11th Cir.1983), and the D.C. Circuit, <u>see</u> <u>GAF Corp. v. United States</u>, 818 F.2d 901, 920 (D.C. Cir. 1987). These cases (directly or indirectly) stand for the proposition that a claimant's failure to comply with agency requests for further information, as authorized by 28 C.F.R. § 14.4(b), does not deprive a federal court of jurisdiction.

support . . . through normal discovery, and can settle the case as easily as it can settle the claim").

To the contrary, as Plaintiffs correctly point out, shortly after the shooting—but before the filing of the administrative claim—the FBI conducted an <u>exhaustive</u> investigation into the circumstances surrounding the incident. Without entering into the confidential nature of the FBI's investigation, suffice it to say that the FBI decided to discipline the Assistant Special Agent in charge of the operation for bringing dishonor to the FBI, and, at some point, the FBI had all the medical records it had initially requested from Plaintiffs in addition to the autopsy report. The government concedes as much. <u>See</u> Docket # 118, p. 1 (saying that the "FBI did not possess [the requested supplementary information] <u>at the outset</u>") (emphasis added). Accordingly, and given the foregoing circumstances in this case, the FBI was plainly put on notice to "reasonably begin [as it did here] an investigation of the claim." <u>Santiago-Ramirez</u>, 984 F.2d at 19; <u>Ramirez-Carlo v. United States</u>, 496 F.3d 41, 46 (1st Cir. 2007). No more is exigible.

In any event, Plaintiffs' failure to furnish the requested documentation is incomparable to the neglect exhibited by the plaintiffs in <u>Swift</u>, who ignored the agency's requests twice as many times as Plaintiffs. True, Plaintiffs' counsel noncompliance with the FBI's requests left a lot to be desired, and have unnecessarily complicated this litigation. But the explanations contained in his affidavit show that his inadvertence was nothing like the neglect displayed by the plaintiffs in <u>Swift</u>. The Court, moreover, cannot overlook that Plaintiffs, after all, did comply with the requested written authorization of representation. <u>See generally</u> <u>Mader v. United States</u>, 654 F.3d 794, 803 (8th Cir. 2011) (en banc) ("[A] properly presented claim under 2675(a) must include evidence of a representative's authority to act on behalf of the claim's beneficiaries under state law."). In short, the Court agrees with and hereby incorporates the way the court in <u>Emeric v. United States</u> distinguished <u>Swift</u>:

> Plaintiffs' attorney did not ignore or neglect the government. Rather, Plaintiffs' attorney failed to provide all documentation that the government deemed necessary to substantiate Plaintiffs' claimed damages so that it could settle for the

amount Plaintiffs demanded. This failure to provide documentation <u>in the context of settlement</u>, unaccompanied by the neglect found in <u>Swift</u>, does not constitute a failure to exhaust administrative remedies under the FTCA. <u>Id.</u> (citations and internal quotation marks omitted). Civ. 09-1806, 2010 WL 1838082, at * 2 (D.P.R. May 5, 2010) (emphasis added).

Although this is a close call, it cannot be said that Plaintiffs' failure to provide the requested documentation "prevented the agency from acting on the claim." <u>Swift</u>, 614 F.2d at 814.  Because Plaintiffs here did all that was required to exhaust their administrative remedies, the Court has subject-matter jurisdiction over the instant suit.

   *B. The "sum certain" requirement*

The government next contends that Plaintiffs' administrative claim seeking "compensation in an amount of not less than one million dollars each"  did not state a sum certain, "as it sought damages only in a vague, indefinite, and open-ended range from a floor of $3 million, to some unspecified ceiling (in other words, 'the sky's the limit')." Docket # 11, p. 11. In doing so, the government maintains, "Plaintiffs flouted the governing regulation and stymied the FBI's ability to make a realistic assessment of its exposure and the advisability of settlement." <u>Id.</u> The government thus concludes that Plaintiffs' action should be dismissed under Rule 12(b)(1), in its entirety, for noncompliance with § 2675(a). The Court is unpersuaded.

Prior to filing suit in federal court, an FTCA claimant must provide the relevant federal agency with an administrative claim seeking damages in a "sum certain." 28 C.F.R. § 14.2(a); <u>Corte-Real v. United States</u>, 949 F.2d 484, 486 (1st Cir. 1991).[7] This "well-established rule," <u>Kokaras v. United States</u>, 980 F.2d 20, 21 (1st Cir. 1992), serves an important purpose:  "to apprise the government of its possible liability and to provide the government with notice 'sufficient to allow it to investigate the alleged negligent episode to determine if settlement

---

[7] 28 C.F.R. § 14.2(a) provides in pertinent part:

 For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident. . . .

would be in the best interests of all." <u>Coska v. United States</u>, 114 F.3d 319, 322 (1st Cir. 1997) (quoting <u>Corte-Real</u>, 949 F.2d at 486) (quoting in turn <u>Lopez</u>, 758 F.2d at 809).

The beacon by which courts in this circuit must stir is <u>Corte-Real</u>, the First Circuit's leading case regarding the "sum certain" requirement. There, the court held that an administrative claim stated a sum certain even though the personal injury box, section 10B of the Standard Form ("SF") 95, was filled out as follows: "$100,000 plus because still treating and out of work." 949 F.2d at 486. The plaintiff had completed the "Total" box, section 10D, by writing in the figure "$100,000," without qualification. <u>Id.</u> at 485. The First Circuit held that "[w]here as here a claim clearly states a specific sum and meets the sum certain requirement in all respects but for concern over the possible detraction of improper surplusage of this insubstantial variety, we see no reason not to strike the surplusage rather than the claim itself." <u>Id.</u> at 487. The court reasoned:

> We agree fully with the Government as to the importance and absolute necessity of adherence to the sum certain requirement. We disagree, however, that plaintiff 's SF95, as submitted, was so deficient as to fall outside the parameters of that requirement. The SF95 did, in fact, specify a sum certain-$100,000-in both boxes, and this figure was unqualified in the box stating the total amount of the claim. To be sure, when the $100,000 appeared in Section 10(B) it was unfortunately accompanied by language suggesting the possibility of a higher claim. The Government was entitled and indeed required, if it was to proceed with the claim, to disregard this. We think it should have done so. To throw out the claim entirely, as other than one for a sum certain, was, on these facts, bureaucratic overkill. <u>Id.</u> at 486.

It would be a "bureaucratic overkill," Plaintiffs say, to hold that qualifying a claim that "states a sum certain" runs afoul of this requirement. Docket # 112, p. 7. The court agrees. Plaintiffs' administrative claim seeking "compensation in an amount of not less than one million dollars each" did not render their claims wholly uncertain. True enough, the unnecessary qualifying language renders the definite figure faulty. But such a deficiency is not egregious enough "as to fall outside the parameters of that requirement." <u>Corte-Real</u>, 949 F.2d at 486. For all intended purposes, Plaintiffs' damages claims are one million dollars each, for a total of three million dollars.

The qualifying language "not less than one million dollars," the Court holds, is surplusage, and, as such, is hereby stricken. See id. This course of action—striking the qualifying language rather than barring the entire claim—comports with most circuits' holdings permitting claims where qualifying language accompanied the amount of damages. See Adams v. United States Dep't of Hous. & Urban Dev., 807 F.2d 318, 322 (2d Cir.1986) (claim for damages "in excess of $1,000.00" valid for $1,000 claim in claim for $4,000,000); Rucker v. United States Dep't of Labor, 798 F.2d 891, 893 (6th Cir.1986) (claim "in excess of $10,000.00-$450,000.00" held valid claim for damages of $450,000); Martinez v. United States, 728 F.2d 694, 697 (5th Cir.1984) (claim stating damages "in excess of $100,000" complied with sum certain requirement; qualification of monetary amount was considered surplus verbiage); cf. Erxleben v. United States, 668 F.2d 268, 273 (7th Cir. 1981) (per curiam) (claim stated "sum certain" where appellant included term "presently" after dollar figure under personal injury heading). But see Bradley v. U.S. by Veterans Admin., 951 F.2d 268, 271 (10th Cir. 1991).

The government relies heavily on Bradley, where the Tenth Circuit held that "because there is no ceiling on the amount, . . . Plaintiff's valuation of his claim as "in excess of $100,000.00" is [in]sufficient to satisfy the sum certain requirement." Id.  Inasmuch as Bradley's restrictive and narrow approach runs afoul of Corte-Real's holding that claims containing qualifying language should be treated as reasonably complying with the sum certain requirement, the Court rejects it. This conclusion comports with this circuit's "lenient" approach, Santiago-Ramirez 984 F.2d at 19,  to the notice requirement, "recognizing that individuals wishing to sue the government must comply with the details of the law, but also keeping in mind that the law was not intended to put up a barrier of technicalities to defeat their claims." Lopez, 758 F.2d at 809. The FTCA, after all, is "intended to provide a framework conducive to the administrative settlement of claims, not to provide a basis for a regulatory checklist which, when not fully observed, permits the termination of claims regardless of their

merits." Erxleben, 668 F.2d at 273 (quoting Koziol v. United States, 507 F.Supp. 87, 91 (N.D.Ill.1981)).

Alternatively, the FBI—who, again, conducted its own investigation prior to the presentation of the administrative claim— plainly knew enough facts from which it could have estimated the value Plaintiffs' damages. Cf. Kokaras, 980 F.2d 20 at 23 ("Our decision[s] . . . support[] saving a claim that is flawed, where the government's investigatory needs are satisfied.") (emphasis added). According to the pleadings, an FBI agent calculated the shooting death of the decedent as being worth "at least two million dollars." It cannot be seriously argued, then,  that the FBI was unable to assess its exposure to this suit. Indeed, the record shows that the amount claimed by Plaintiffs sufficed "to enable a determination by the head of the federal agency as to whether the claim falls within the jurisdictional limits of his exclusive authority to process, settle or to properly adjudicate the claim." Bialowas v. United States, 443 F.2d 1047, 1050 (3d Cir.1971) (citing Pub.L. 89–506, 1966 U.S.Code, Cong. & Adm. News, p. 2518). And the FBI's counsel made that pellucid when it informed Plaintiffs' counsel that the damages claimed exceeded the agency's $50,000 statutory settlement authority.

At any rate, the government could have avoided this problem had it notified Plaintiffs of its acceptance of the three million dollars claim, or required Plaintiffs to amend their claims to that effect. In Coska, the First Circuit placed considerable weight on the fact that the "United States made a number of specific requests for the sum certain," 114 F.3d at 323, but the plaintiff ignored all those requests. Here, the need for a specific certain, the record reflects, was "kept secret" from Plaintiffs "in hopes of defeating . . . [their] claim" Id. Now, almost two-and-a-half years after the filing of the complaint, the government comes forward with this argument. While the government is indeed allowed to "engage in such sandbagging tactics," Sanchez ex rel. D.R.-S., 671 F.3 at 113 (Torruella, J., dissenting) (citation omitted), countenancing its argument that the inclusion of the term "no less than" renders Plaintiffs' claims a nullity "would be unfair and inequitable." Jacobson v. U.S. ex rel. U.S. Postal Serv., 276 F. Supp. 2d 1106, 1110 (D. Nev. 2003); cf. Dynamic Image Technologies, Inc. v. United States, 221 F.3d 34, 40 (1st Cir.

2000) ("Congress did not intend to shield the federal fisc behind an impenetrable thicket of lawyerly technicalities.") (citing <u>Santiago-Ramirez</u>, 984 F.2d at 19; <u>Lopez</u>, 758 F.2d at 809).

Therefore, under 28 U.S.C. § 2675(b) the total of three million dollars "act[s] as a ceiling on . . . [Plaintiffs'] eventual recovery." Any attempt by Plaintiffs to claim an amount in excess of three million dollars, therefore, can only be predicated on the exceptions for "newly discovered evidence" or "allegation and proof of intervening facts" as provided in § 2675(b). <u>Reilly v. United States</u>, 863 F.2d 149, 170 (1st Cir. 1988). This equitable middle ground—striking the qualifying language while limiting the claims to three million dollars—dispels the government's "the sky's the limit" concerns. Plaintiffs thus satisfy the "sum certain" requirement, and the Court has jurisdiction to entertain this suit.

*C.  The other challenged claims*

Undeterred, the government also contends that, because Plaintiffs failed to exhaust administrative remedies regarding their "inherited" claim for damages based upon the decedent's pre-death pain and suffering, the Court is jurisdictionally required to dismiss that claim. Docket # 105, p. 14. This argument is without merit.

The government correctly points out that the administrative claim neither alleges any pre-death "pain and suffering" by the decedent nor seeks damages for any injury suffered by the decedent specifically. "Nowhere in the administrative claim," the government maintains, "does any Plaintiff indicate that he or she is proceeding in a capacity as the decedent's "heir" or on behalf of the decedent or his estate." <u>Id.</u>, p. 15.  And as correctly observed by the government, the damages allegations contained in the administrative complaint refer exclusively to what Plaintiffs, themselves, allege they personally experienced as a result of the decedent's death.

In determining whether a complaint exceeds the scope of the administrative claim, the First Circuit has crafted the following "eminently pragmatic" test: "as long as the language of an administrative claim serves due notice that the agency should investigate the  possibility of particular (potentially tortuous [sic]) conduct and includes a specification of the damages sought, it fulfills the notice-of-claim requirement." <u>Dynamic Image Technologies, Inc.</u>, 221 F.3d

at 40; accord Lopez, 758 F.2d at 809 (listing of brain concussion and post-traumatic headache held satisfactory despite failure to claim "mental damages"); In Dynamic Image, the plaintiff filed an administrative claim for damages with the United States Postal Service following his forcible removal from a postal service trade show. 221 F.3d at 36. In the claim he alleged "negligent misrepresentation, libel, slander, intentional interference with contractual relations, and discrimination under 42 U.S.C. § 1983." Id. He then brought claims under the FTCA for false arrest, intentional infliction of emotional distress and negligent supervision. Id. at 37. Because those causes of action were based on an incident not mentioned in his administrative claim, the First Circuit held, the agency was not put on notice that it should investigate the potentially tortious conduct, and dismissed the complaint for lack of subject matter jurisdiction. Id. at 40-41; accord Harris v. United States, 797 F. Supp. 91, 93 (D.P.R. 1992).

In a similar vein, the Tenth Circuit has "interpreted the provision to require notice of the facts and circumstances underlying a claim rather than the exact grounds upon which plaintiff seeks to hold the government liable." Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d 840, 853 (10th Cir. 2005) (construing and following Dynamic Image) (citations omitted). The Eleventh Circuit similarly does "not require the claimant to provide the agency with a preview of his or her lawsuit by reciting every possible theory of recovery." Burchfield v. United States, 168 F.3d 1252, 1255 (11th Cir. 1999) (citation omitted). The Seventh Circuit and Fifth Circuits are likewise in accord. See Murrey v. United States, 73 F.3d 1448, 1452 (7th Cir. 1996) (Posner, J.) ("[N]o statement of legal theories is required, only facts plus a demand for money, the claim encompasses any cause of action fairly implicit in the facts."); Life Partners Inc. v. United States, 650 F.3d 1026, 1030 (5th Cir. 2011) (holding that plaintiffs are not required "to specifically enumerate legal theories of recovery in their administrative claims") (quoting Frantz v. United States, 29 F.3d 222, 224 (5th Cir.1994)), cert. denied, 132 S. Ct. 1104 (2012); see also Palay v. United States, 349 F.3d 418, 426 (7th Cir. 2003)([A]ny cause of action fairly implicit in the fact  that Palay set forth in the Form 95 will be considered a claim that was

"presented to the Bureau of Prisons for purposes of the exhaustion requirement.") (citations and internal quotation marks omitted; alterations in original).

Plaintiffs argue that their administrative claim informed the FBI that they sought compensation for the fatal shots Hewitt fired at the decedent. They thus maintain that they put the government on notice of the facts and circumstances for which they sought compensation, "without the need of sending the government a draft complaint supported by a legal memorandum with citations to the law and precise causes of action." Docket # 11, p. 9. The Court concurs. Plaintiffs' administrative claim was based on the same underlying conduct and incident that supported their "inherited" claims, namely the shooting death of Gonzalez by an FBI agent. The emphasis is not on the actual causes of action, but on the notification that an accident has occurred so that the agency can conduct a full investigation of the incident. Here, the decedent's pre-death pain and suffering cause of action can be gleaned from the administrative claim, because plaintiffs informed the government that they sought compensation for the very same incident: the shots that ultimately killed Gonzalez. Because Plaintiff do not "seek[] recovery based solely on an incident that was not mentioned in the plaintiffs' administrative claim," Dynamic Image Technologies, Inc., 221 F.3d at 40, Plaintiffs properly exhausted their administrative remedies regarding the "inherited claim". This conclusion clearly comports the First Circuit's pragmatic approach. See id.

Not so fast, the government aptly retorts. Insisting that when there are multiple claimants, "each claimant must individually satisfy the jurisdictional prerequisite of filing a proper claim," Haceesa v. United States, 309 F.3d 722, 734 (10th Cir. 2002), cert. denied, 40 U.S. 814 (2003), the defendant correctly alleges that, under Puerto Rico law, "the personal-capacity claims Plaintiffs assert in their own right are separate and distinct from the inherited claim they asserted in the decedent's stead." Docket # 118, p. 7 (citing Viuda de Delgado v. Boston Ins. Co., 1 P.R. Offic. Trans. 823 (1973)); see also Montalvo v. Gonzalez-Amparo, 587 F.3d 43, 47 (1st Cir. 2009) (noting that "Puerto Rico law provides that a decedent's claim for tortiously inflicted pain and suffering sustained by the decedent prior to death can be transmitted to her heirs"). But

under Puerto Rico inheritance law "a decedent estate <u>is not</u> an entity distinct and separate from the persons composing it." <u>Arias-Rosado v. Tirado</u>, 111 F.Supp.2d 96, 98 (D.P.R. 2000) (emphasis added). "The succession does not have existence by itself as a juridical person or entity on behalf of which a lawsuit can be brought." <u>Id.</u> at 98-99 (collecting Puerto Rico case law). Where as here, a decedent has no offsprings, his parents are the presumptive heirs. <u>See</u> P.R. Laws Ann. tit. 31, §§ 2651-2652. Because the decedent's parents, as heirs, are not separate from the decent's estate, the government's premise that there are multiple claimants is mistaken. This ends the matter.

*The Discretionary Function Exception*

Next, the government alleges that the discretionary function exception precludes Plaintiffs new negligence claims challenging the manner in which the FBI conducted the underlying kidnapping investigation and the ensuing arrest and rescue operation. Plaintiffs do not fare as well here, as the Court agrees with the government on this point.

The discretionary function exception immunizes the government from liability stemming from "certain important governmental functions and prerogatives from disruption." <u>Molzof v. United States</u>, 502 U.S. 301, 311 (1992); <u>see</u> 28 U.S.C. § 2680(a). Specifically, "Congress has taken steps to protect the Government from liability that would seriously handicap efficient government operations." <u>Id.</u> (quoting <u>United States v. Muniz</u>, 374 U.S. 150, 163 (1963)); <u>see also</u> <u>Carroll</u>, 661 F.3d at 99 ("The Supreme Court has observed that the discretionary function exception marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.") (citations and internal quotation marks omitted).

Under the normative <u>United States v. Gaubert</u>, 499 U.S. 315 (1991), this exception applies if the conduct underlying an FTCA claim meets two prongs. To satisfy the first prong, the challenged conduct must "'involve[] an element of judgment or choice . . . .'" <u>Limone v. United States</u>, 579 F.3d 79, 101 (1st Cir.2009) (quoting <u>Berkovitz by Berkovitz v. United States</u>, 486 U.S. 531, 536 (1988)). It is well settled that conduct does not entail an element of judgment

or choice if a "'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.' " Gaubert, 499 U.S. at 322 (quoting Berkovitz, 486 U.S. at 536) (emphasis added). Where, however, "the government actors in question have latitude to make decisions and choose among alternative courses of action, the conduct is discretionary." Bolduc v. United States, 402 F.3d 50, 61 (1st Cir. 2005) (citing Irving v. United States, 162 F.3d 154, 163-64 (1st Cir. 1998) (en banc)).

The second prong questions whether the judgment "was susceptible to policy-related analysis." Limone, 579 F.3d at 101. Conduct is susceptible to policy analysis if "some plausible policy justification could have undergirded the challenged conduct; "it is not relevant whether the conduct was "the end product of a policy-driven analysis." Shansky v. United States, 164 F.3d 688, 692 (1st Cir.1999). Importantly, in this circuit there is a "presumption that the exercise of discretion by a government official implicates a policy judgment." Carroll, 661 F.3d at 104; but see id. n. 15 (noting circuit split on whether the plaintiff or the government bears the burden of proof on the discretionary function exception).

The first prong is satisfied in this case. A review of the amended complaint shows that, in making policy-based decisions to execute the actions challenged by Plaintiffs, the FBI agents involved in the underlying investigation and subsequent operation permissibly made a judgment call or a "choice." And because the challenged decisions did not violate any "specific" or "mandatory" terms  of any relevant congressional enactment, regulation, or agency policy, the FBI personnel enjoyed discretion to act according to "their judgment of the best course." Dalehite v. United States, 346 U.S. 15, 34 (1953).  Here, it cannot be said that the FBI personnel had "no rightful option but to adhere to . . . [a] directive," Berkovitz, 486 U.S. at 536, as Plaintiffs plead no facts showing the existence of any specific and mandatory directive.

Plaintiffs demur, arguing that this first prong is inapplicable because "the FBI violated its own policies and practices in the conduct of this kidnap[p]ing rescue operation." Docket # 112, p. 15. They point to seven aspects of the FBI operational/investigative conduct that were

"negligent" and allegedly violated FBI policies.[8] As the government aptly observes, however, Plaintiffs come nowhere close to establishing how that conduct violated the <u>specific</u> and <u>mandatory</u> command of any statute, regulation, or agency policy. They have not adverted to any federal statute, regulation, or policy that dictates a <u>specific</u> regime of oversight that the FBI personnel must practice to ensure that agents properly conduct a kidnapping rescue operation. The alleged "polices" and "practices" they say the FBI contravened, depend solely on generalized, non-specific, and non-mandatory statements from disciplinary records, witness statements, and deposition transcripts. But Plaintiffs have not provided the Court with the language or contents of any <u>actual</u> agency "policy" or "directive" relevant to this case.[9]

Their submissions, it turns out, fall way short of meeting the standard set forth by the First Circuit to survive dismissal on discretionary function grounds. <u>See</u>, <u>e.g.</u>,<u>Sanchez ex rel. D.R.-S.</u>, 671 F.3 at 97-98 (reiterating that "arguments that conduct was non-discretionary under <u>Gaubert</u> when FTCA plaintiffs have identified only vague, permissive, or unidentified requirements for government conduct. . . . Nor may a plaintiff rely on an unsubstantiated recollection of an unidentified policy statement; testimony that purports to describe written policies and regulations is no substitute for the original text.") (citations and internal quotation marks omitted); <u>Shansky</u>, 164 F.3d at 691 (agency "[s]tatements" cast at a high "level of generality do not satisfy <u>Gaubert</u>'s and <u>Berkovitz</u>'s specific prescription requirement. Were the law otherwise, the discretionary function exception would be a dead letter."). Accordingly, the

---

[8]Specifically, Plaintiffs focus on the following: (1) the decision of an FBI Assistant Special Agent in Charge to take "civilians" with him to the scene and, as suspects were fleeing amidst gunfire, to "drive into the middle of the operation"; (2) the lack of a "written operations plan"; (3) a lack of "awareness" by FBI personnel as to the use of ransom money and the involvement of POPR officers (including their units' location); (4) an unclear FBI "chain of command"; (5) a lack of clarity as to which FBI agent(s) would have "the 'eye' on the victim's stepson"; (6) deficient radio communications such that FBI agents used cellular phones to communicate; and (7) a lack of air surveillance. Docket # 112, pp. 3-4 n. 2 & pp 12-15 .

[9]To the contrary, and as corrected noted by the government, the FBI's decisions were authorized by federal law. <u>See generally</u> 28 U.S.C. § 533; 18 U.S.C. § 3052; 28 C.F.R. § 0.85.

Court holds that the way the FBI conducted the underlying investigation and subsequent operation was discretionary in nature.

The same holds true for the second prong. The Court agrees with the government that the FBI decisions challenged by Plaintiffs are exactly the "judgments" that "the discretionary function exception was designed to shield" against "judicial second-guessing," Gaubert, 499 U.S. at 322-23; Berkovitz, 486 U.S at 537. "The purpose of the exception is to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" Gaubert, 499 U.S. at 323 (quoting Berkovitz, 486 U.S. at 537; United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814 (1984)). These were, as stated above, judgment calls that were infused with considerations of public policy, comprising the weighing of competing factors (such as the allocation of resources), and implicating the safety of the participating law-enforcement personnel, the kidnapped victim, and the general public. Indeed, the unpredictable, on-the-spot judgments made by the FBI agents in this case are just the kind of law enforcement or investigative decisions that courts have consistently protected by virtue of the discretionary function exception. See, e.g., Kelly v. United States, 924 F.2d 355, 362 (1st Cir. 1991) ("decisions to investigate" are "at the core of law enforcement activity" and "involve[] precisely the kind of policy-rooted decisionmaking" that the FTCA's "discretionary function" exception "was designed to safeguard"); see also, e.g., Pooler v. United States, 787 F.2d 868, 871 (3d Cir. 1986) (finding that deficiencies in investigative methods leading to plaintiff's arrest were discretionary choices shielded from FTCA liability, as "Congress did not intend to provide for judicial review of the quality of investigative efforts," and "[d]ecision making as to investigation and enforcement, particularly when there are different types of enforcement action available, are discretionary judgment"); Timmerman v. United States, No. 11-1816, 2012 WL 2052149, at *3 (D.P.R. Jun. 5, 2012) ("Simon's claims that ICE agents negligently investigated his case and handled evidence are barred by the discretionary function exception.")

In the factually analogous Priah v. United States, 590 F. Supp. 2d 920, 922 (N.D. Ohio 2009), the court held that the discretionary-function barred surviving family member's negligence action arising from FBI raid that was intended to rescue cooperating federal witness from kidnappers, but resulted in shooting death of a witness by a FBI agent. The court reasoned that the criminal law enforcement decisions at issue, i.e. investigation, planning, and commencement of rescue/arrest, were of the type that discretionary-function exception was designed to shield. Id. Others courts have reached similar conclusions. See Flax v. United States, 847 F. Supp. 1183, 1189 (D.N.J. 1994) (holding that negligent actions of FBI agents in surveilling kidnapping victim fell within discretionary function exception to FTCA); see also Maravilla v. United States, 867 F. Supp. 1363, 1382 (N.D. Ind. 1994) ("planning how to effect an arrest falls within the discretionary function exception to the FTCA"). The FBI agents in this case, just like the officers Priah, had to choose from various options "as to how best to fulfill [their] duty," and, therefore, the law-enforcement decisions they made in the course rescuing the victim and apprehending the perpetrators are "protected by the discretionary function exception to the FTCA." Horta v. Sullivan, 4 F.3d 2, 21 (1st Cir. 1993).

Plaintiffs offer no developed rebuttal to overcome the presumption that the exercise of discretion by the FBI agents in this case implicates policy judgments. And that is unsurprising, given the phalanx of cases cited above, establishing that the law enforcement determinations challenged by Plaintiffs, barring an applicable specific and mandatory directive restricting discretion, are the kind of judgment calls protected by the discretionary function exception. These authorities undermine Plaintiffs' undeveloped contention that a federal agency lacks discretion to act "without negligence" anytime it "undertakes" a law-enforcement "task," Docket # 112, p. 3 (citing Indian Towing Co. v. United States, 350 U.S. 61 (1955)). Plaintiffs' reliance on Indian Towing is wholly misplaced; "[t]hat decision did not involve the discretionary function exception . . . ." Sanchez ex rel. D.R.-S., 671 F.3d at 100 n. 10; Harrell v. United States, 443 F.3d 1231, 1237 (10th Cir. 2006) ("Indian Towing is simply not

persuasive authority in the context of the discretionary function exception"). Accordingly, the way the FBI agents conducted the underlying kidnaping investigation and the ensuing arrest and rescue operation was unquestionably in furtherance of public policy considerations, namely the apprehension of criminal suspects engaged in unlawful activities and the rescue of a kidnapped individual.

In sum, because the FBI's decisions were a matter of agency discretion and involved policy judgments of a kind that the discretionary function provision was intended to shield, the Court lacks subject-matter jurisdiction to entertain Plaintiffs' claims on this front. Consequently, the Court need not entertain the government's other arguments, i.e., Plaintiffs' alleged failure to exhaust administrative remedies, and lack a "private party analogue," 28 U.S.C. § 1346(b)(1).

*Plaintiff Isidra Ortiz-Lebron's loss of earnings compensation*

Finally, the government moves to dismiss Ortíz-Lebrón's claim for her son's future earnings. Inasmuch as she allegedly seeks to recover her son's lost future earnings "on behalf of the decedent in her alleged capacity as heir", the government says, "it is absolutely clear that no such claim is viable in a wrongful-death suit premised on Puerto Rico law." This argument is meritless.

Under the FTCA, the law of Puerto Rico—subject to the FTCA's ban on punitive damages, 28 U.S.C. § 2674—determines the allowable damages. Molzof, 502 U.S. at 305."The FTCA requires resort to state substantive law, that is, 'the law of the place where the [tortious] act or omission occurred.' This statutory directive has consistently been interpreted to require that damages in an FTCA suit—with a few exceptions not germane at this point—must be assessed in conformity with state law." Reilly, 863 F.2d at 161 (quoting 28 U.S.C. § 1346(b)).

The Court need not tarry long here, as the governments' premise is plainly incorrect. A perfunctory review of the amended complaint shows that Ortiz-Lebron is claiming loss of earnings compensation (called lucrum cessans in Puerto Rico civil-law's tradition) on her own behalf, and not as part of her inheritance, as incorrectly alleged by the government. See Docket

# 100, ¶ 78 ("To the extent Orlando Gonzalez provided support for his mother at the time of his death, she is entitled to economic damages."). Because she alleges to have been economically dependent on his son's earnings, her claim is potentially meritorious. E.g., Sucn. Pacheco v. Eastern Med. Assoc., Inc., 1994 P.R.-Eng. 909,291 (1994) (Patrimonial or succession matters . . . do not in any way affect the legitimacy of . . . [a (lucrum cessans] claim.").  What matters is that the person bringing such a claim "depended economically on the decedent at the time of his death. Id. Accordingly, the government's contention on this front is way off the mark. And Ortiz-Lebron's claim for her loss of her son's future earnings is neither implausible nor barred by Puerto Rico law.

**Conclusion**

For the reasons stated, the government's motion to dismiss is **GRANTED in part and DENIED in part**. Plaintiffs' claims challenging the manner in which the FBI conducted the underlying kidnapping investigation and the ensuing operation are therefore **dismissed** for lack of subject-matter jurisdiction.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of December, 2012.

*S/Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge