IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ISIDRA ORTIZ-LEBRON, ET AL.,

    Plaintiffs,

    v.

UNITED STATES OF AMERICA,

    Defendant.

**Civil No. 10-1513 (SEC)**

**OPINION AND ORDER**

Before the Court are the defendant's motion for partial summary judgment (Docket # 161), the plaintiffs' opposition thereto (Docket # 170), and the defendant's reply (Docket # 173). After reviewing the filings and the applicable law, the defendant's motion is **GRANTED**.

**Factual and Procedural Background**

This is a suit under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680, in which the plaintiffs seek damages in connection with the shooting death of Orlando González-Ortíz, an officer of the Police of Puerto Rico. As relevant here, plaintiff Isidra Ortíz-Lebrón, González-Ortíz's mother, claims damages based on the economic support she previously received from her son.[1]

A comprehensive depiction of the allegations and procedural history of this case can be found in the opinion of December 12, 2012, granting in part and denying in part the Government's motion to dismiss. Ortiz-Lebrón v. United States, No. 10-1513, 2012 WL 6552782 (D.P.R. Dec. 14, 2012). Here, the Court focuses on those facts relevant to the discrete and exceedingly narrow damages question presented by the Government's motion for partial

---

[1] That is to say, Ortíz-Lebrón claims money damages for lost future earnings, also known as "lost profits" or "loss of earnings compensation." The Spanish word for this term, "lucro cesante", in turn derives from the Latin lucrum cessans, a term employed by the Puerto Rico Supreme Court decisions cited throughout this opinion. For ease of reference, the Court will simply use the term "lost future earnings."

**Civil No. 10-1513 (SEC)** Page 2

summary judgment. The following short, undisputed material facts are outlined in a light most favorable to the non-movant, Ortíz-Lebrón.

The 70-year old Ortíz-Lebrón is, as related, the mother of González-Ortíz, who was 32 years old when he died in August 2008. Docket # 161-1 (SUF), ¶¶ 1-2; Docket # 170-1, ¶ 2. While has was alive, González-Ortíz told his mother that "he would always take care of her," and that he dreamed of "becom[ing] an FBI agent." Docket # 170-1 (ASUF), ¶¶ 2-3.[2] To that end, the record shows that González-Ortíz participated in several "trainings" offered by the FBI and other related agencies. Id. ¶ 4.

Prior to his death, González-Ortíz provided economic assistance to his mother ever since he was hired by the Police Department until his untimely death. Docket # 170-1, ¶ 3; SUF ¶ 4. He did this through cash payments ranging from $100 to $150, "approximately twice a month." Id. ¶ 3. At the time of his death, González-Ortíz had several living expenses — to wit: monthly mortgage payments, "a property-maintenance fee, his car, and utilities." He also "intended to marry his longtime girlfriend." Id. ¶ 5.

Against this factual backdrop, the Government moved for partial summary judgment, arguing that "[d]iscovery in this case has established that there is no genuinely disputed issue of material fact as to the proper "measure, or the scope, of [this] remedy." Docket # 161, p. 3 (citation and internal quotations marks omitted; alterations in original). The Government thus moves the Court under Fed. R. Civ. P. 56(a) and 56(g) to hold that the "most" Ortíz-Lebrón may recover "from the decedent's lost future earnings is the specific portion thereof representing the particular amount of economic assistance she actually received from the decedent at death and could have reasonably expected to receive, prospectively, had the decedent lived." Id., p. 5

---

[2] The Court assumes without deciding that the statements made by the decedent are admissible evidence.

**Civil No. 10-1513 (SEC)**                                                                 Page 3

(emphasis in original).³ According to the Government, "on this summary-judgment record, it is, at most, a sum based on her receipt of $300/month . . . ." Id.

Ortíz-Lebrón timely opposed. Docket # 170. She urges the Court to reject the Government's request, arguing that there is at least one "material fact at issue," namely whether the decedent "would have increased his support payments to his mother with her increased needs as she aged and his increased ability to provide for her as his salary increased." Id., p. 2. The Court addresses the parties' arguments in turn.

**Standard of Review**

The Court may grant a motion for summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Kelley v. Correctional Medical Services, Inc., 707 F.3d 108, 155 (1st Cir. 2013). At this stage, it is axiomatic that courts "may not weigh the evidence," Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994), but must construe the record in the "light most flattering" to the nonmovant. Soto-Padro v. Public Bldgs. Authority, 675 F.3d 1 (1st Cir. 2012). Courts must similarly resolve all reasonable inferences in favor of the party opposing summary judgment. Id.

Because the summary judgment inquiry is grounded in the factual evidence available, one of its principal purposes "is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court may therefore consider "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(A). Inadmissible evidence, such as

---

³"If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P 56(g); Latin American Music Co. Inc. v. Media Power Group, Inc., 705 F.3d 34, 40-41 (1st Cir. 2013); see also Fed. R. Civ. P. 56 (a) (codifying rule that motion must "identify[] each claim or defense —or the part of each claim or defense— on which summary judgment is sought")

**Civil No. 10-1513 (SEC)**  Page 4

hearsay evidence considered for the truth of the matter asserted, is excluded at this stage. Hannon v. Beard, 645 F.3d 45, 49 (1st Cir. 2011).

Once the party moving for summary judgment has established an absence of material facts in dispute, and that judgment is proper as a matter of law, the burden shifts to the non-movant to "affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Kenney v. Floyd, 700 F.3d 604, 608 (1st Cir. 2012) (internal quotation marks omitted); Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 117 (1st Cir. 2005) (quoting Garside, 895 F.2d at 48). A material fact, in turn, is one that may affect the outcome of the suit under the governing law. Maymí v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008). The non-movant may not rest on conclusory allegations and improbable inferences. Shafmaster v. U.S., 707 F.3d 130, 135 (1st Cir. 2013); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Neither "effusive rhetoric," Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997) nor "arguments woven from the gossamer strands of speculation and surmise," RTR Technologies, Inc. v. Helming, 707 F.3d 84, 93 (1st Cir. 2013), suffice to forestall the entry of summary judgment. In short, the non-movant must "point to competent evidence and specific facts to stave off summary judgment." Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). Failure to shoulder this burden, "allows the summary judgment engine to operate at full throttle." Lawton v. State Mut. Life Assur. Co., 101 F.3d 218, 223 (1st Cir. 1996).

**Applicable Law and Analysis**

*Ortiz-Lebron's lost future earnings*

Under the FTCA, the law of Puerto Rico — subject to the FTCA's ban on punitive damages, 28 U.S.C. § 2674 — controls the allowable damages. Molzof v. United States, 502 U.S. 301, 304 (1992). "The FTCA requires resort to state substantive law, that is, 'the law of the place where the [tortious] act or omission occurred.'" Reilly v. United States, 863 F.2d 149,

**Civil No. 10-1513 (SEC)**                                                                                        Page 5

161 (1st Cir. 1988) (quoting 28 U.S.C. § 1346(b)). "This statutory directive has consistently been interpreted to require that damages in an FTCA suit — with a few exceptions not germane at this point — must be assessed in conformity with state law." Id. (citations omitted).

In the Commonwealth, tort law governs claims for lost future earnings. The "field of torts," is in turn controlled — "[b]oth in form and in content — by the civil law system." Valle v. American International Insurance Co., 8 P.R. Offic. Trans. 735, 736 (1979) (Trias, C.J.); see, e.g., Mateo v. Empire Gas Co., Inc., 841 F.Supp.2d 574, 582 (D.P.R. 2012); Díaz v. González, 261 U.S. 102, 105-06 (1923) (warning that federal courts should not reassemble Puerto Rico law "according to common law conceptions") (Holmes, J.). Under Article 1802 of the Civil Code, tort actions arise when there has been a violation of a right or an omission of a duty required by law; the person who, through fault or negligence, causes damage to another shall be obliged to repair the damage so done. P.R. Laws Ann. tit. 31, § 5141.

A claim for lost future earnings is the type of "compensable damage[] . . . sustained by the persons whose needs were met by the decedent." Sucn. Pacheco v. Eastern Med. Assoc., Inc., 1994 P.R.-Eng. 909, 291 (1994). In a similar vein, Article 1056 of the Puerto Rico Civil Code provides that the basis for awarding such damages is the loss "of the profit which the creditor may have failed to realize . . . ," P.R. Laws Ann. tit. 21, § 3023 — put another way, "the loss of the well-founded and reasonable expectancy of future benefits." Sucn. Pacheco, 1994 P.R.-Eng. 909 at 291; accord Noble v. Corporación Insular de Seguros, 738 F.2d 51, 54 (1st Cir. 1984).

The Puerto Rico Supreme Court has made clear that the linchpin of the lost future earnings evaluation is economic dependency. "A claim for pecuniary loss (lucrum cessans) by reason of the predecessor's death . . . belongs to those persons who depended economically on the decedent at the time of his death." Sucn. Pacheco, 1994 P.R.-Eng. 909 at 291. This non-inheritable claim, see Pate v. U.S.A., 20 P.R. Offic. Trans. 591, 596 (1988) (reiterating that "a predecessor's loss of earnings is not part of the estate transmissible to his heirs"), then, belongs only to those dependents who can prove "that their income derived from the predecessor's estate

**Civil No. 10-1513 (SEC)**                                                                                                   Page 6

was effectively interrupted." <u>Sucn. Pacheco</u>, 1994 P.R.-Eng. 909 at 291; <u>Zurkowsky v. Honeywell</u>, Inc., 12 P.R. Offic. Trans. 336, 340-41 (1982) (holding that "the concept '<u>lucrum cessans</u>' (lost profits) is inexorably linked to that of economic dependence at the time of death," and that dependents "have a cause of action, as recipients of an income that is interrupted 'totally or partially, temporarily or permanently.'" (citation, footnote and internal quotation marks omitted)).[4]

Turning to the facts of this case, it follows, at the very least, that Ortíz-Lebrón cannot recover the <u>totality</u> of her son's lost future earnings. Rather, as the Government correctly maintains, she may only reclaim the particular support that she received from her son during his life: A maximum of $300 per month, as she testified in her deposition. The undisputed evidence of record shows that this figure would make Ortíz-Lebrón whole. And that is all to which she is entitled under the governing law. That is so because the Commonwealth tort law system is of a "remedial nature," <u>Del Moral v. UBS Fin. Servs. Inc. of Puerto Rico</u>, 815 F. Supp. 2d 495, 505 (D.P.R. 2011) (citing <u>Correa v. A.F.F.</u>, 83 P.R. Dec. 144, 154 (1961)), it merely "seeks to place the injured party into the condition she would have been had the negligent breach not occurred," <u>id.</u> (citing <u>Rivera Colón v. Díaz Arocho</u>, 165 P.R. Dec. 408, 427 (2005)). "Civil liability is, precisely, the duty to redress the aggrieved party, fixing an economic value on the damages suffered." <u>García Pagán v. Shiley Caribbean, etc.</u>, 22 P.R. Offic. Trans. 183, 196 (1988). In the lost future earnings context, this is the amount of "future earning that probably could have been expected within the <u>normal</u> <u>course</u> of things." <u>Velázquez v. Ponce Asphalt</u>, 13 P.R. Offic. Trans. 53, 63 (1982) (emphasis added); <u>see</u> <u>also</u> <u>Suro v. E.L.A.</u>, 11 P.R.

---

[4] With respect to the lost future earnings computation, Puerto Rico's highest court has explained:

> Th[e] loss [of earnings] is measured against the present value of the probable income the deceased might have generated during the rest of their productive lives. The estimated personal expenses the deceased might have had are to be deducted from the income, and the balance represents the pecuniary loss taken as damages. <u>Publio Diaz v. E.L.A.</u>, 6 P.R. Offic. Trans. 1173, 1189 (1978).

**Civil No. 10-1513 (SEC)**                                                                                           Page 7

Offic. Trans. 563, 568 (1981) ("In short, claimants may only recover what their decedent could have actually earned up to the time when he were to stop working."). Awarding Ortíz-Lebrón more than what she lost is tantamount to imposing punitive damages, which are unequivocally prohibited in Puerto Rico. See, e.g., Ganapolsky v. Park Gardens Dev. Corp., 439 F.2d 844, 846 n. 1 (1st Cir. 1971).

The interdependency of the controlling requirements, as the Government correctly points out, buttresses this conclusion. That is to say, Ortíz-Lebrón must first show (1) "economic dependence at the time of death," Zurkowsky, 12 P.R. Offic. Trans. 336 at 340 — i.e., a quantifiable sum of "prior earnings," Pate, 20 P.R. Offic. Trans. 591 at 595; and (2) "a reasonable probability" that her son would have continued making such payments — that is "continued income." Id. The Court agrees with the Government's well-reasoned and persuasive reply that "all that is compensable under the Puerto Rico doctrine of lucrum cessans is the plaintiff's loss of the particular income she was receiving from the decedent at death, not the loss of some other, unspecified sum she never received in life but —based upon unsupported speculation rather than evidence— she might have received in the future had the decedent lived." Docket #161, p. 6. And this makes good sense: The Puerto Rico Supreme Court, afer all, imposed the requirement of "economic dependence at the time of death." Zurkowsky, 12 P.R. Offic. Trans. 336 at 340. Without a cap on the potentially recoverable lost future earnings, the dependency requisite would have no raison d'etre.[5] Notably, Ortíz-Lebrón failed to rebut the Government's answered reply on this score. And that is unsurprising: The Government's sound reading of the lost future earnings doctrine is simply in line with Puerto Rico law.

---

[5] At least where as here, the decedent was an adult, courts should generally refrain from allowing an award that exceeds the economic support a decedent provided a parent in life. That is so because such an exercise would invite way too much speculation, a prospect that, barring exceptional circumstances, has been disavowed. E.g., Ruiz Santiago v. E.L.A., 16 P.R. Offic. Trans. 376, 384 (1985). It would be another story if we were dealing with a so-called claim for "impairment of the general earnings potential," for this type of claim "cannot be subject to the conventional concept of loss of earnings." Id. at 381. A discussion of this closely related, yet distinct doctrine, however, exceeds the scope of this opinion.

**Civil No. 10-1513 (SEC)**                                                                                          Page 8

Ortíz-Lebrón resists this conclusion. Although she concedes with the irrefutable proposition that her entitlement is circumscribed to the "compensation for the amount of support she would had a 'well-founded and reasonable expectancy' of receiving from her son's continued income," Ortíz-Lebrón nonetheless posits that such "'well founded and reasonable expectancy' is not limited to the $300 a month" that Ortíz-Lebrón "was receiving when her son was killed." Docket # 170, p. 2 (citing Puerto Rico law). She instead maintains that she may recoup economic damages to substitute the actual amount of financial assistance she received from her son, plus an unrevealed quantity she "could have reasonably expected to receive, in the future, had the decedent lived." Id. Insofar as Ortíz-Lebrón's medical necessities would grow, the conjectural argument goes, "her son would have increased the amount of support he provided." Id., p. 3. She further speculates, as previously noted, that her son "envisioned becoming an FBI agent himself one day, and FBI agents are far better compensated than Puerto Rico officers." Id., p. 4.

The problem with Ortíz-Lebrón's theory is that it runs afoul of Puerto Rico law and the interpretative civil-law doctrine. "It is incumbent upon the Law to make a careful distinction between . . . dreams of earnings, . . . . and the true idea of the damage." Ruiz Santiago v. E.L.A., 16 P.R. Offic. Trans. 376, 384 (1985) (quoting III J. Castán Tobeñas, Derecho civil español, común y foral 243-244 (13th ed. 1983)). And Ortíz-Lebrón's allegation that her son "dreamed" of becoming an FBI agent is, well, literally the so-called "dreams of earnings" proscribed by Puerto Rico law. As fully discussed below, the same is true for her unfounded contention that her son would have increased her monthly support to the extent that her medical needs increased. Neither Ortíz-Lebrón nor the Court has found any Puerto Rico case law in support of the ipse dixit that she may recover damages untethered to the actual financial assistance that she received from her son.

It is true, as Ortíz-Lebrón demurs (Docket # 170, p. 3), that the lost future earnings calculation is "not devoid of a certain degree of speculation." Ruiz Santiago, 16 P.R. Offic. Trans. 376 at 383. But such a speculation refers to the inescapable reality that "[t]he loss of

**Civil No. 10-1513 (SEC)** Page 9

earnings is always a future. It is a future earning that, hypothetically, is never realized and this is something necessarily contingent and doubtful." Id. at 384-85 (citation omitted). A hypothetical involving the facts of this case further illustrates the point. González-Ortíz never died; rather, his financial circumstances became so onerous that he could no longer afford to take care of his mother. Or perhaps he contracted an illness that rendered him unable to generate an income. Under either scenario, the economic assistance provided to Ortíz-Lebrón would cease. Of course, this is the kind of speculation that cannot be resolved against Ortíz-Lebrón. "There is a just median where we find the verisimilar and probable income, bearing in mind the normal course of events." Id. at 385 (citations and emphasis omitted); Pérez-García v. Puerto Rico Ports Auth., 873 F. Supp. 2d 431, 434 (D.P.R. 2012) ("[I]t is reasonable for the economic experts to assume Plaintiff would have remained employed within the United States."); see also H. Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico 501 (2d. ed.1986).

Even assuming, arguendo, that Ortíz-Lebrón could reclaim damages in excess of the amount of economic support that she received from her son, she still introduces no competent summary-judgment evidence to sustain such a steeper valuation. The Court need not tarry long here. Suffice it to say that Ortíz-Lebrón's contention relies solely on her "unsworn statement" and that of her other son. Docket # 170-3, 170-5. But these "unsworn statements," as the Government correctly points out, are insufficient to survive summary judgment. The short answer is that they contain nothing but unfounded speculation that her son "would have increased his support payments to his mother with her increased needs as she aged and his increased ability to provide for her as his salary increased." Docket # 170, p. 2. Because Ortíz-Lebrón's rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation,'" Pagano v. Frank, 983 F.2d 343, 437 (1st Cir. 1993) (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)), she fails to shoulder her burden under Rule 56. See Jakobiec v. Merrill Lynch Life Ins. Co., 711 F.3d 217, 226 (1st Cir. 2013) ("The summary judgment stage is the put up or shut up moment in litigation." (citation and internal quotation marks omitted)). The Court agrees with the Government that Ortíz-Lebrón

**Civil No. 10-1513 (SEC)**                                                                                      Page 10

marshals no genuine, material evidence showing that she "has now, or would have in the future, particular sums of uncovered medical expenses that decedent, had he lived, would have paid himself." Docket # 173, p. 9. As to Ortíz-Lebrón's conjecture that her son "dreamed" of becoming an FBI agent, the Court already held, see above page 8, that this "surmise" is allowed neither by the controlling law, see, e.g., Ruiz Santiago, 16 P.R. Offic. Trans. 376 at 383, nor under the summary judgment standard. See RTR Technologies, Inc. v. Helming, 707 F.3d 84, 93-94 (1st Cir. 2013) (affirming district court's refusal to credit plaintiff's "bald assertions" regarding lost future earnings claim). Ortíz-Lebrón's failure to shoulder her burden of producing competent evidentiary proof concerning the elements of her lost future earnings claim "is grounds for summary judgment." Jakobiec, 711 F.3d at 226.

**Conclusion**

For the reasons stated, the financial assistance Ortíz-Lebrón received from her son during his life — a maximum of $300 per month — prescribes the boundary limits of what she may recover under a lost future earnings claim. The Government's motion for partial summary judgment is thus **GRANTED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of May, 2013.

*S/Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge